Filed 2/16/24
Reposted with complete counsel listing

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of TARA and ROBERT D. | |
| TARA D., | D080977 |
| Respondent, | |
| v. | (Super. Ct. No. DN180142) |
| ROBERT D., | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Sharon L. Kalemkiarian, Judge.  Motions to augment granted.  Affirmed.

Bickford Blado & Botros and Andrew J. Botros for Appellant.

No appearance for Respondent.

Cage & Miles, Shannon B. Miles and John T. Sylvester for Minors.

Robert D., the father in these dissolution proceedings, appeals a final custody order issued after a multiday evidentiary hearing. He claims the court abused its discretion by refusing to grant a continuance after his attorney withdrew from the case on the day before trial was set to begin, effectively depriving him of the ability to retain new trial counsel. We agree that when it permits the withdrawal of counsel on the eve of trial, the court has a special obligation to assess the length of a continuance that would be required for the affected party to obtain a new lawyer and balance that against other pertinent circumstances that would be adversely affected by a delay in the proceedings. Where the court makes this assessment and engages in the appropriate weighing of competing interests, its decision will not be reversed absent an abuse of discretion.

Here, the trial court never inquired about the length of the continuance that was being sought or might be required, making it impossible to perform the required balancing analysis. Instead, it simply declared there would be no continuance and then (commendably) attempted to explain what it could do to accommodate the now-self-represented family law litigant. It is thus the failure to inquire and assess that constitutes an abuse of discretion in this case. Even so, however, Robert has not shown that the court's error resulted in a "miscarriage of justice" for purposes of article VI, section 13 of the California Constitution. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Robert and Tara divorced in 2016 after having four children together. In November 2019, Robert filed a request for order (RFO) seeking sole legal and physical custody of the children. A hearing, initially set for February

2

2020 just prior to the COVID-19 shutdown, was continued to June 2020.[1] After several more continuances, the causes of which are not entirely clear from the record, the court set the matter for a five day trial beginning November 16, 2021. Accordingly, the court set a number of pretrial deadlines and an October 14, 2021 trial readiness conference. At the trial readiness conference, the court pushed back the start of trial by one day, to November 17, 2021, and reserved an extra day for trial in December.

On October 29, 2021, Robert's counsel filed an application to continue the trial on the grounds that Tara had "not formally responded to [Robert's] RFO; a [Child Welfare Services] investigation [was] now open; [and] [one of the children's] therapist[s] has referred her to [MINORS'] COUNSEL due to a serious issue that has arisen that must be properly addressed." The court denied the application, making a request that Child Welfare Services attempt to conclude its investigation before the trial.

On November 10, 2021, one week before trial was set to begin, Robert's counsel filed a motion to be relieved, claiming there had been a "[b]reakdown in the attorney-client relationship." The court granted counsel's request to shorten time for a hearing on the motion, advancing it to November 16, 2021. But the judge added a handwritten note to the order: "Trial of 11/17/21 <u>will not</u> be continued."

---

[1] It appears that Robert's responsive declaration was rejected by the clerk because counsel had not properly filed his motion to withdraw. However, the reporter's transcript clearly reflects that the court received, read, and considered Robert's declaration. We therefore find that even if was not "filed," this document was "lodged in the case in superior court," and we grant Robert's motion to augment the record on appeal with the file-stamped copy attached to his July 23, 2023, Request to Reply re: Objection to Motion to Augment Record on Appeal. (Cal. Rules of Court, rule 8.155(a)(1)(a) (subsequent rule references are to the California Rules of Court).)

On the morning of November 16, Robert filed a declaration in response to the motion, stating, "I must affirm that the attorney-client relationship has broken down," and requesting a continuance of the trial so he could obtain new counsel. Robert's declaration also stated that he "retained" or "attempted to retain" another lawyer "in an act of desperation" after receiving the motion to withdraw a week before trial.

At the hearing on counsel's motion to withdraw, the court said its tentative decision was to deny the motion "at this late stage" because counsel is "not allowed to prejudice [his] client." The judge added, "I'm not going to continue this, and it's been clear to everyone that I wasn't going to continue it, because I know continuances were requested recently."

The court heard argument from Robert's attorney, who testified that the parties had recently gotten close to settlement and that he had realized in the process "there was a distinct conflict between" Robert and himself. Counsel stated, "I told [Robert] . . . that I would probably be filing this should he pursue certain positions." According to counsel, settlement talks progressed, and a draft agreement was prepared. Several days later, Robert had not responded to the draft, but had made comments to counsel's staff indicating "he wanted to pursue positions at trial that [counsel was] not in agreement with." Thereafter, counsel filed his motion to withdraw. The court asked the attorney, "Do you have concerns that certain positions would expose you to an ethical problem regarding your representation of him?" Counsel responded, "I think so. I think there are a number of concerns I have, which is that, you know, I am barred from taking positions that are known to be frivolous."

Robert also testified and said that he did not agree with counsel's summary of their relationship, denying that counsel had told him the

4

positions were "frivolous." However, he also said, "I don't disagree with [counsel's] position. That's why I did say there that I can affirm the attorney-client relationship has broken down." He further testified that he had concerns with his lawyer's performance, saying "there's a problem with the communication," and claiming that counsel "really hasn't had time to bone up on the relevant history, but, you know, . . . for him to say that he believes my position is frivolous is -- you know, is flabbergasting to me." Referencing the declaration he submitted, Robert said he had "reach[ed] out to alternate counsel" as an "act of desperation." But he did not confirm that he had retained new counsel and indicated that if counsel withdrew, he would be left to proceed unrepresented.

The court ultimately permitted counsel to withdraw, stating, "[Counsel] can't conduct a trial when fundamentally there is a difference between you and him -- or from his perspective and his client about how to proceed and what the end goal is. [¶] And so having heard more, I am going to grant his request to withdraw." The court recognized that it put Robert "in a difficult position," but said, "I also recognize that I have made it clear again and again that this trial was not going to be continued. [¶] I have -- it's not good for your kids or for mom or for you, for that matter, to have this go on any longer."

Robert's now-former lawyer explained that he had not filed a trial brief or exhibit list because there was "a fundamental difference of opinion of what should be filed." The court did not ask Robert to clarify whether he had actually retained the attorney mentioned in his declaration, or how long it might take for that new lawyer to prepare for trial. Indeed, there were no questions about possible substitute counsel. Apparently assuming that

5

Robert would be representing himself, the court decided to postpone trial one day to permit Robert "to get his ducks in a row."

Robert told the court that he did not want to proceed without counsel and did not think he could successfully try the case on his own. The court nonetheless declined to continue the trial further:

> "Mr. Delgado, here's the thing: I know it's difficult. I will give you procedural road maps as we go. You know your case. You have been involved in a lot of court proceedings, and, you know, I'll make sure [Tara's counsel] doesn't take advantage of you. [¶] [Tara's counsel], you're on notice. And he knows that that is the case. We have got counsel for the children. We're going to do the best we can, but this cannot be delayed any more, and we need to get -- move forward. If you wish to consider further -- [¶] . . . [¶] -- further settlement conversations, you certainly -- it's never too late for that. I'm confident having read through the file, that with the witnesses that are anticipated and the information the Court will have, that we'll get through it."

Robert's former lawyer was directed to prepare an order, and counsel confirmed that he would.[2] In the findings and order, the court "recognized that [Robert] was concerned about proceeding without counsel," but "indicated it had previously told all parties that there would be no continuance of the trial."

---

2    It appears that counsel never prepared an order. Instead, Robert's appellate counsel prepared the order, which was signed and entered by the court on July 13, 2023. Although we ordinarily do not consider orders entered after the notice of appeal is filed, the order here formally memorializes the ruling that is the subject of the appeal and allows the appeal to proceed. We therefore grant the unopposed motion to augment the record with the July 13, 2023, Findings and Order After Hearing, Attachment to Findings and Order After Hearing of November 16, 2021, and Clerk's Certificate of Service by Mail.

Trial began two days later, and hearings were held on six nonconsecutive days from mid-November 2021 to mid-January 2022. Several days into the trial, Tara moved for a mistrial on the grounds that Robert's self-representation combined with his failure to appear in person were creating too many irregularities in the proceedings. The court appeared at points to offer the parties a continuance until August or September 2022 to "give [Robert] a chance to retain an attorney," but ultimately denied the mistrial motion and ordered Robert to start attending the proceedings in person. Robert continued to represent himself, including filing written closing arguments in March 2022.

On May 16, 2022, the trial court issued a proposed statement of decision and interim orders awarding Tara sole legal custody and both parents equal physical custody. Robert hired new counsel by July 20, 2022.

On September 7, 2022, the court filed its statement of decision and entered final custody orders pursuant to *Montenegro v. Diaz* (2001) 26 Cal.4th 249. The court stated it "largely agree[d] with the findings of [the court-appointed custody evaluator] and the observations of [minors'] counsel in her written closing argument." The judge concluded, "Based upon the testimony received and the behavior of both parents," that the parents could not "make decisions together." "[Robert's] behavior indicates that he will not respect [Tara's] opinion about anything. He has exercised medical judgment without a doctor's direction or consent. His actions and conduct concern the Court and [Tara]. The Court therefore finds it is in the best interest of the children for [Tara] to have sole legal custody, as sole legal custody to [Tara] will provide consistency in medical and educational decisions for the children."

The court also mentioned "concerns about [Robert's] failure to pay child support, the significant arrears balance, and the suspension of [his] driver's license (which [he] expressed he did not even know about, a position which was not credible[ ])[.]"  It further noted Robert's negative interactions with school personnel and minors' counsel's staff, and stated that it "came close to limiting [Robert's] time to alternate weekends based upon the testimony and ho w [Robert] behaved in the courtroom," finding that "the father is poisoning the well and influencing the children in a negative manner and that [Robert] has a very negative opinion of [Tara]."  Despite these concerns, however, the court ultimately credited arguments by minors' counsel and testimony of the custody evaluator "who indicated the children have a good relationship with both parents and that they love both parents," and found it in the best interests of the children to continue "[t]he equal timeshare" that had "been going on for many years."

Now represented by counsel,  Robert filed this appeal.  Tara has not filed a brief on appeal, but the children (through minors' counsel) oppose Robert's arguments.

## DISCUSSION

Robert asserts the trial court abused its discretion by refusing to grant a continuance after permitting his attorney to withdraw on the eve of trial. He further contends that this error requires reversal and remand for a new trial.  Although we agree with his first argument, we find that the error was not prejudicial under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*) because on the facts of this case it is not reasonably probable that an appropriate continuance, if granted, would have changed the result.

8

A.   *Robert's Claim of Error Is Procedurally Preserved*

We first address two procedural arguments that minors' counsel claim requires affirmance.  Counsel first assert that Robert has failed to provide an adequate record of the challenged proceedings because the first day of trial on November 18, 2021 was not reported, but was instead memorialized in a settled statement.  They maintain we cannot decide the appeal in Robert's favor because the settled statement does not give any reasons for the court's denial of the continuance.

Notwithstanding the parties' contentions, however, it does not appear that Robert requested a continuance on the first day of trial at all.  The settled statement summarizes *prior proceedings* as follows: "The Court notes that, Robert's prior . . . attorney . . . was released by the Court on November 16, 2021 . . . .  The Court denied Robert's request for a continuance to obtain counsel, and that Robert is now pro per.  The Court noted the pleadings received from Robert were late, but the Court still accepted his documents under the circumstances."  The minutes of the first day of trial similarly do not reflect any renewed request for continuance.  We cannot conclude that the court denied a renewed request on the first day of trial.

In any case, the record is sufficient with respect to the request Robert clearly did make.  Robert asked for a continuance in writing in his response to counsel's request to withdraw.  The court considered and denied the request on November 16, giving reasons at the hearing and in its order.

Separately, minors' counsel claims that we should affirm because Robert failed to file a "noticed motion or formal ex parte application" as required by Rule 3.1332(b).  This is not an appropriate basis for

9

affirmance. Robert requested a continuance in his written declaration submitted to the court. The court addressed that request on the merits and said it would not grant any continuances. Repackaging the same request as a noticed motion would have been pointless in light of the court's clear statements. "The law does not require a futile act." (*Crawford v. JPMorgan Chase Bank, N.A.* (2015) 242 Cal.App.4th 1265, 1274.)

Moreover, although "mere self-representation is not a ground for exceptionally lenient treatment" (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984), "[t]rial judges must acknowledge that propria persona litigants often do not have an attorney's level of knowledge about the legal system and are more prone to misunderstanding the courts requirements" (*Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1284). Robert, proceeding without counsel against his wishes, would have reasonably understood that his motion for a continuance had been denied on the merits. It would be perverse to penalize him for failing to formally renew a request that he knew had already been rejected.

B.  *The Trial Court Abused Its Discretion in Denying a Continuance Without Any Inquiry into the Particulars of the Request*

Rule 3.1332(c) specifically addresses requests for the continuance of a trial based on the unavailability of counsel:

> "Although continuances of trials are disfavored, each request for a continuance must be considered on its own merits. The court may grant a continuance only on an affirmative showing of good cause requiring the continuance. Circumstances that may indicate good cause include: . . . [¶] . . . [¶]
>
> (3) The unavailability of trial counsel because of death, illness, or other excusable circumstances; [and]

10

(4)  The substitution of trial counsel, but only where there is an affirmative showing that the substitution is required in the interests of justice[.]"

"In ruling on a motion or application for continuance, the court must consider all the facts and circumstances that are relevant to the determination." (Rule 3.1332(d).)  The factors that are typically significant are listed in the rule and include:

"(1)  The proximity of the trial date;

(2)  Whether there was any previous continuance, extension of time, or delay of trial due to any party;

(3)  The length of the continuance requested;

(4)  The availability of alternative means to address the problem that gave rise to the motion or application for a continuance;

(5)  The prejudice that parties or witnesses will suffer as a result of the continuance;

(6)  If the case is entitled to a preferential trial setting, the reasons for that status and whether the need for a continuance outweighs the need to avoid delay;

(7)  The court's calendar and the impact of granting a continuance on other pending trials;

(8)  Whether trial counsel is engaged in another trial;

(9)  Whether all parties have stipulated to a continuance;

(10)  Whether the interests of justice are best served by a continuance, by the trial of the matter, or by imposing conditions on the continuance; and

(11)  Any other fact or circumstance relevant to the fair determination of the motion or application." (*Ibid.*)

We review a trial court's denial of a continuance for abuse of discretion. (See *Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389, 1395 (*Oliveros*).)

Losing counsel shortly before trial often constitutes good cause for a continuance. (See, e.g., *Oliveros, supra*, 120 Cal.App.4th at 1395 [trial court erred in denying request for a trial continuance in medical malpractice case where lead trial counsel was unavailable due to another trial]; *Hernandez v. Superior Court* (2004) 115 Cal.App.4th 1242, 1244 (*Hernandez*) ["If plaintiff's counsel's serious physical illness and its debilitating effects culminating in death during the final stages of litigation are not good cause for continuing a trial and reopening of discovery, there is no such thing as good cause."]; *Vann v. Shilleh* (1975) 54 Cal.App.3d 192, 196 (*Vann*) ["[A] necessary substitution of counsel just prior to trial may justify the granting of a continuance, in some cases."]; see also Rule 3.1332(c)(3)–(c)(4).) Here, the court appeared to recognize as much, noting that counsel's withdrawal "at this late stage" was likely to "prejudice" Robert. The court permitted counsel to withdraw because of "fundamental differences . . . on how to proceed and what the goals are at trial." The court did not assess fault for the breakdown, nor was such a finding required to conclude that withdrawal was appropriate. (See *Estate of Falco* (1987) 188 Cal.App.3d 1004, 1014 ["It was not relevant who caused the breakdown for the purposes of determining whether appellants should be allowed to withdraw, but rather, the trial court's concern focused on the effects the rift would have on [clients'] legal representation."].) These are, therefore, circumstances that on their face would seem to justify a continuance of some duration. (See Rule 3.1332(c).)

Nonetheless, after deciding to permit counsel to withdraw, the court explained that it would not grant a continuance primarily because it had previously told the parties the trial would not be continued. The court's order simply noted that it had "indicated it had previously told all parties that there would be no continuance of the trial." Consistency may be a virtue, but as Ralph Waldo Emerson reminds us, "A foolish consistency is the hobgoblin of little minds." The appropriate exercise of judicial discretion requires the judge to reexamine tentative conclusions in light of changed circumstances. Here, the decision to permit the withdrawal of counsel on the eve of trial is nothing if not a changed circumstance. The court could not merely rely on its prior statements, but was instead required to revisit the reasons those statements to determine whether they still applied in light of the changed circumstance.

In *Vann, supra,* 54 Cal.App.3d 192, 197, as in this case, the court granted an attorney's request to withdraw on the eve of trial.[3] Personally appearing in court the following day, the defendant asked for a continuance to obtain new counsel. (*Vann,* at p. 195.) The judge denied the request, pointing to the court's heavy calendar and "no continuance" policy. (*Id.* at pp. 195–196.) The Court of Appeal reversed, concluding that the judge abused his discretion by "ma[king] no effort to analyze the situation in which [the defendant] found himself." (*Id.* at p. 198.) It noted that the judge's decision "was peremptory and based solely on a policy against continuances, without

_____

[3] The appellate court ultimately concluded that the attorney's withdrawal was improper and amounted to abandonment of the client. (*Vann, supra,* 54 Cal.App.3d at p. 197.)

13

considering whether the case before it justified a departure from that salutary policy." (*Id.* at p. 199.)

The trial court's decision in this case was not based on a blanket department policy against continuances in every case, as was the situation in *Vann*. But it was based on a blanket policy of denying any continuance of the trial in this case, despite a significant change of circumstance. In that sense, it suffers from a similar defect—the failure to consider whether new facts and a developing situation necessitate reevaluation of a prior decision and rebalancing the competing interests. (See *Hernandez, supra,* 115 Cal.App.4h at p. 1247.) Thus, we do not hold that the trial court was obligated to grant a continuance, or that a continuance of some particular length was required. The problem here is that the court failed to conduct the necessary inquiry.

Minors' counsel points out that the court did not merely rely on its prior ruling that there would be no continuances. The court specifically explained to Robert, "[I]t's not good for your kids or for mom or for you, for that matter, to have this go on any longer." Minors' counsel thus suggests that "the paramount need to determine the proper care and custody of the children, on balance, outweighed grounds for a continuance."

There is no question that the goal of promptly resolving custody disputes deserves significant weight. (Cf. *In re Jerry R.* (2023) 95 Cal.App.5th 388, 431 ["Children have a critical interest in stability and permanency, which is undermined by unnecessary delay"].) Here, however, there is no indication that the court balanced the general

14

interest in efficiency and finality[4] against the new "facts and circumstances . . . relevant to the determination." (Rule 3.1332(d).) Importantly, although Robert suggested that he had already made efforts to retain new counsel, the court did not ask whether that attorney had agreed to take the case or how long it would take the new attorney to prepare for trial. Without making this fundamental inquiry, the court lacked the information necessary to balance the competing interests at stake. It thus failed to properly exercise its broad discretion. (See *Oliveros, supra,* 120 Cal.App.4th at p. 1399 ["The court's failure to carefully balance all of the competing interests at stake, guided by the strong public policy in favor of deciding cases on the merits, constituted an abuse of discretion."].)

Minors' counsel urges us to find that factors in the record *could have* supported a decision to deny a continuance. But that is precisely the problem, and the argument misapprehends our role on review. The trial court is surely endowed with broad discretion to grant or deny continuances. (*J.M. v. W.T.* (2020) 46 Cal.App.5th 1136, 1139.) " '[W]hen the record clearly demonstrates what the trial court did, we will not presume it did something different.' " (*Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1550.) The court having made its determination and a record of its reasons, our role is to review the court's decision making. And we cannot know whether

---

4       We note that neither the court nor minors' counsel identified any specific circumstances in this case that would warrant the denial of *any* continuance longer than a day. (Cf. *Hernandez, supra,* 115 Cal.App.4th at 1247 ["prejudice petitioner suffered due to the terminal illness and death of his attorney" was not outweighed by opposing party's "claim that he would be prejudiced" by a continuance, which was "conclusional" and not "supported with any evidence"].)

denial of the continuance in this case was proper because the record does not include the necessary and critical inquiries.  In these circumstances, we must conclude that the court abused its discretion.

C.  *Robert Has Failed to Establish Reversible Error*

Having concluded that the trial court's denial of Robert's request for a continuance is not supported by the record, we turn to the question whether this error requires reversal.  The California Constitution states:

> "No judgment shall be set aside, or new trial granted, in any cause . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.)

This provision usually prohibits reversal where the challenged error did not affect the outcome of the proceedings and thus did not prejudice the appellant.  (See *In re Christopher L.* (2022) 12 Cal.5th 1063, 1073 (*Christopher L.*).)  However, "certain errors, by their nature, result in a 'miscarriage of justice' within the meaning of the California [Constitution,] requiring reversal without regard to the strength of the evidence received at trial."  (*People v. Cahill* (1993) 5 Cal.4th 478, 493.)  We call such errors "structural."  (See *Christopher L.*, at p. 1074.)

We first consider whether the failure to grant a continuance constituted a structural error.  Concluding that it does not, we proceed to Robert's alternative argument that there is a reasonable probability that the court's failure to grant a continuance affected the outcome of the custody proceedings under the *Watson* test.[5]

---

5      For the first time on reply, Robert appears to offer a third alternative argument, contending that "the showing of prejudice on the denial of a

16

1. *There Is No Structural Error*

Robert principally contends that under *Vann, supra,* 54 Cal.App.3d 192, the trial court's abuse of discretion warrants automatic reversal. As we have already explained, the appellate court in *Vann* reversed a trial court's decision denying a continuance after it improperly permitted a lawyer to withdraw the Friday before a Monday trial, leaving the clients (defendants in the action) unrepresented. (*Id.* at p. 197.) It concluded that the error was reversible without considering whether defendants suffered prejudice. (*Id.* at p. 200 ["[W]e reverse on the grounds that the denial of the continuance was an abuse of discretion"].)

While the decision of a sister appellate court is entitled to our thoughtful consideration, it is not binding on us. (See, e.g., *People v. Osotonu* (2019) 35 Cal.App.5th 992, 998.) Because *Vann* gives no reason for its conclusion that the error was reversible without any discussion of prejudice, we do not find it particularly persuasive on this point. Moreover, we are bound by the California Constitution's dictate that we may reverse only if there has been a "miscarriage of justice." (Cal. Const., art. VI, § 13.) And recent Supreme Court authority provides helpful guidance in determining whether an improper denial of a continuance that effectively precludes a client from retaining trial counsel is inherently a miscarriage of justice.

continuance is a bit different from the typical analysis of prejudice." His reply brief claims he is not required to show a possibility of a "different result" to demonstrate "prejudice" because he was deprived a "fair hearing." But Robert made no such argument in his opening brief, clearly contending that an error gives rise to reversible prejudice if it " 'affected the verdict' " and that "[a]s a result of his lack of counsel, Tara was awarded sole legal custody." To the extent Robert seeks to belatedly raise a new argument, we decline to consider it. (See, e.g., *Holguin v. Dish Network LLC* (2014) 229 Cal.App.4th 1310, 1328, fn. 9 [issues not raised in opening brief are forfeited].)

In *Christopher L.*, *supra,* 12 Cal.5th 1063, the question presented was "whether it is structural error, and thus reversible per se, for a juvenile court to proceed with a hearing to determine its jurisdiction over a child and disposition of the dependency petition without an incarcerated parent's presence and without appointing counsel for the parent." (*Id.* at p. 1069.) The court held "that while the provisions for presence and appointment of counsel are important protections for both the parent and the child, the juvenile court's failure to comply does not require reversal per se." (*Ibid.*)

Justice Liu's opinion looked to three factors enumerated in *Weaver v. Massachusetts* (2017) 582 U.S. 286 (*Weaver*). (*Christopher L.*, *supra,* 12 Cal.5th at p. 1077.) "The first of the three *Weaver* rationales asks whether 'the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest.'" (*Ibid.*, quoting *Weaver*, at p. 295.) The court found that the interest in counsel and personal presence "ensures that the juvenile court has the fullest picture of the relevant facts before disposing of a dependency petition," which is "not easily distinguished from the parent's own interest because it also serves to protect the parent from an erroneous determination." (*Christopher L.*, at p. 1077.)

Second, *Christopher L.* considered "that the question of whether the errors here were harmless does not invariably require 'a speculative inquiry into what might have occurred in an alternate universe.'" (*Christopher L.*, *supra,* 12 Cal.5th at p. 1078.) The court recounted the appellate court's prejudice analysis to illustrate the "feasibility of harmless error analysis in this context." (*Ibid.*) The question in the family court was "whether the court properly denied reunification services to" the father, and there were two indisputably applicable provisions providing that reunification services not "be ordered unless the juvenile court f[ound], 'by clear and convincing

evidence, that reunification is in the best interest of the child.' " (*Id.* at pp. 1078–1079.)  Father had failed to argue that reunification services were in the best interests of the child.  (*Id.* at p. 1079.)

Third, the court considered whether these "error[s] 'always result[ ] in fundamental unfairness.' " (*Christopher L.*, *supra,* 12 Cal.5th at p. 1081.)

> " '[I]n a dependency proceeding the issues normally involve evaluations of the parents' present willingness and ability to provide appropriate care for the child and the existence and suitability of alternative placements.' [Citation.]  The presence of counsel generally helps to facilitate this assessment by ensuring that a more complete picture of the parent's interests and ability to provide for the child's care are presented to the court.  But it does not follow that the absence of counsel invariably results in unfairness in light of the statutory scheme governing reunification services. Nor does it follow that absence of counsel from one stage of the proceeding necessarily renders the entire proceeding fundamentally unfair, especially where, as here, counsel was provided after the jurisdiction and disposition hearing, and could have utilized a statutory mechanism to seek reconsideration of any prior order by the juvenile court. (*Ibid.*)

The opinion observed that, "in the dependency context, automatic reversal for errors that do not invariably lead to fundamental unfairness would exact a particularly steep cost" to children who have a critical need to stable homes. (*Ibid*.)  The Supreme Court thus "decline[d] to adopt a rule of automatic reversal in cases involving the errors that occurred here."  (*Id.* at p. 1082.)

*Christopher L.* adopts and applies a framework for assessing whether an error is structural.  That analysis is all the more relevant because of the salient ways in which dependency and custody proceedings are similar,

including the unique interests at stake and the primacy of child welfare.[6] *Christopher L.* thus guides our analysis here.

The first *Weaver* factor, whether " 'the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest' " (*Christopher L., supra,* 12 Cal.5th at p. 1077), has a nearly identical application to these circumstances. In making a permanent custody determination, the court must consider "all of the circumstances bearing on the best interests of the minor child" (*Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1053), and thus benefits from the presence of counsel to ensure it "has the fullest picture of the relevant facts" (*Christopher L.,* at p. 1076). This is "not easily distinguished from the parent's own interest" (*id.* at p. 1077) because in adversarial proceedings each parent is interested in presenting their best case for custody.

With respect to the second factor, Robert does not suggest that this is the kind of case that "invariably require[s] 'a speculative inquiry into what might have occurred in an alternate universe.' " (*Christopher L., supra,* 12 Cal.5th at p. 1078.) In fact, as explained below, he argues that he can meet the harmless error standard of *Watson.*

As for the third factor, whether these "error[s] 'always result[ ] in fundamental unfairness' " (*Christopher L., supra,* 12 Cal.5th at p. 1081), we cannot conclude they do. As in *Christopher L.*, Robert was only unable to retain counsel for trial, not all proceedings. (*Ibid.*) Although a custody trial was a "critical stage," so too was the proceeding in *Christopher L.* (*Id.* at

---

6    We also acknowledge important ways in which juvenile court proceedings are different, including the potential in dependency for termination of parental rights and the statutory right to appointed counsel. (See, e.g., *In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1575 (*Campi*).)

p. 1076.)  Moreover, given that the trial in this case took place on nonconsecutive days over the course of several months, we cannot assume that the court's refusal to grant a continuance deprived Robert of counsel for the entirety of the trial.  Robert does not explain why he failed to obtain counsel at any point during the extended trial.

In addition, *Christopher L.* found it important that there are grounds to request reconsideration of any order in dependency proceedings if the parent shows "(1) that a change of circumstances or new evidence requires a changed order, and (2) that the requested change would promote the best interests of the child." (*Christopher L.*, *supra,* 12 Cal.5th at p. 1080.)  Although the standards are not identical (see, e.g., *Ragghanti v. Reyes* (2004) 123 Cal.App.4th 989, 996 [principles of res judicata inform "changed circumstances" test in custody cases]), final custody orders can be changed if a parent establishes a " ' "significant change in circumstances indicates that a different arrangement would be in the child's best interest." ' " (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1088.)  Like the parent in *Christopher L.*, Robert is not forever barred from seeking to alter the custody order.

Finally, Robert briefly contends that these circumstances always result in a deprivation of due process, pointing to dicta in *Vann* suggesting that there is a constitutional right to "counsel in any adversary proceedings in which the adversary party has the benefit of the right to counsel." (*Vann, supra*, 54 Cal.App.3d at 200.)  We are not bound to follow any court's dicta. (See *Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1301.)  In general, although a party has the right to appear through counsel if a lawyer has been retained (see *Chan v. Curran* (2015) 237 Cal.App.4th 601, 625, fn. 12), there "is no due process right to counsel in

21

civil cases" (*Walker v. State Bar* (1989) 49 Cal.3d 1107, 1116). There is no statute or court rule mandating counsel in dissolution proceedings. (*Campi*, *supra*, 212 Cal.App.4th at p. 1575.) Indeed, it is not "fundamentally [un]fair" for purposes of the Due Process Clause of the United States Constitution to deprive a parent of counsel in a dependency proceeding where parental rights are at stake. (*Lassiter v. Department of Social Servs.* (1981) 452 U.S. 18, 32–33; see U.S. Const., 14th Amend.) Rather, to establish a violation of due process, a parent must show that the presence of counsel could have "made a determinative difference." (*Lassiter*, at p. 33.) In other words, we must engage in a prejudice analysis—assessing whether the lack of representation affected the result—to decide whether the party's due process rights were violated. Accordingly, because the lack of representation in such circumstances does not *inherently* offend due process, we cannot conclude that the error here is a structural one requiring per se reversal.

2.     *Robert Has Not Shown Prejudice*

Both sides contend we should look to the *Watson* test and reverse if it is reasonably probable that Robert would have achieved a more favorable result in the absence of the error. (*Watson, supra*, 46 Cal.2d at p. 836.)[7] After

---

[7]     We do not hold that this is the appropriate harmless error analysis in all cases in which denial of a continuance results in deprivation of trial counsel. But by only discussing the *Watson* standard, Robert has forfeited any argument that a different standard applies. (See, e.g., *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 726 [arguments not raised on appeal are forfeited].) In any case, Robert has not established that the denial of a continuance gave rise to a violation of the United States Constitution and thus has not demonstrated that the *Chapman* harmless error standard should apply. (*Chapman v. California* (1967) 386 U.S. 18, 24 ["[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."].)

closely reviewing the record, we conclude Robert has failed to establish prejudice and reversible error under *Watson*.

Because it is Robert's burden to show prejudice, we note at the outset that he makes no representation regarding the availability of another lawyer had the court granted him a continuance. He merely assumes he could have obtained alternate counsel. This is particularly problematic given the statements in his declaration to the effect that he had already contacted a specific attorney. Moreover, although the proceedings continued over the course of several months, Robert never sought to substitute new counsel.

More importantly, even if we assume competent counsel was available to try the case had a reasonable continuance been granted, all of Robert's grounds for claiming prejudice suffer from the same deficiency. He fails to explain how any of the circumstances he notes had a substantive effect on the outcome of the case. For instance, he contends that he had to submit a trial brief prepared in one day and that "Tara's attorney had 7 months to prepare for trial." Although suggestive of disadvantage, Robert does not point to any tangible effect of these circumstances.

Robert also claims he was unable to effectively challenge Tara's contention that he had waived his privilege regarding his mental health. The court found only a limited waiver with respect to Robert's representations to a custody investigator. Robert fails to explain what else an attorney could have argued or how the court's ruling affected his case.

Robert further contends that he "was not allowed to call the children's therapist . . . for additional testimony" or to call the parenting coordinator because they were not on his witness list. As he acknowledges, however, both witnesses did testify in some capacity. Robert conducted a direct examination of the therapist, his first witness, and the parenting coordinator

23

was permitted to testify as a rebuttal witness. He fails to explain what other testimony he anticipated eliciting had he been permitted to question these witnesses further.

Similarly, Robert asserts in his reply brief that he was prejudiced because he was not allowed to introduce police body-worn camera footage based on his failure to call the officers as witnesses and properly lay a foundation. " 'We will not ordinarily consider issues raised for the first time in a reply brief.' " (*Magana v. Superior Court* (2018) 22 Cal.App.5th 840, 855, fn. 2.) In any event, Robert again fails to explain what these videos would have shown or how they would have affected the outcome of the case.

In sum, Robert has given us no basis to conclude that the denial of a continuance affected the outcome of the proceedings.

## DISPOSITION

The order is affirmed. The parties shall bear their own costs on appeal.


DATO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


O'ROURKE, J.

24